BASSICK, *Appellant, v.* PORTLAND GENERAL
ELECTRIC COMPANY, *Respondent.*

426 P. 2d 450

*Nick Chaivoe,* Portland, argued the cause for appellant. With him on the briefs were Peterson, Chaivoe & Londer, Portland.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondent. With him on the brief were Gordon Moore, and Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and FORT, Justices.

FORT, J. (Pro Tempore).

Plaintiff's employer, Tyee Construction Company, entered into a written contract with the defendant, Portland General Electric Company, to replace certain

of its electrical transmission lines with new conductors of greater capacity. The contract expressly provided that the work was to be done by Tyee while another transmission line upon the same poles, known as the underbuild, was fully energized. There were, however, occasions, for which the contract made provision, when it became necessary to turn off the power in the underbuild to allow certain aspects of Tyee's work to be done. Whenever this occurred the contract provided that "* * * Any switching must be done by Portland General Electric Company crews." This provision of course applied to the restoration of the power as well.

The plaintiff, Nicholas Bassick, was a regular employee of Tyee and had himself been working upon electrical line construction for twelve years. On the day of the accident the Tyee crew, of which he was a member, was working with the underbuild line not energized during the morning. The switch controlling the flow of energy into the underbuild was then located on a pole about half-a-mile from and completely out of sight of the area where plaintiff and his crew were working. Jack Young, a Tyee employee, was foreman of this crew. All of its members were Tyee employees. No employee of Portland General Electric Company was working with this crew or in its vicinity. Under the contract the defendant had no right of control over the work being done by this Tyee crew, nor did it exercise any.

It was understood by both Tyee and the defendant that the underbuild line would be re-energized before noon on that day in order to bring service to four of defendant's customers during the noon hour.

For this purpose shortly before 11:00 a.m., a journeyman lineman and an apprentice lineman employed

by Tyee, an inspector, Lewis, of the defendant, and a safety inspector of the State Industrial Accident Commission met at the switching pole. While these four were at the switching pole, contact by two-way radio was had with Jack Young, Tyee foreman of plaintiff's crew, by Don Lewis, the defendant's inspector. This was done for the express purpose of finding out if Tyee was ready to have the underbuild re-energized. Mr. Young was with his crew. The evidence is uncontradicted that Young twice by radio told Lewis to go ahead and "heat up" the line, the second time immediately before it was done. Lewis thereupon directed that the line be energized. The actual procedure of closing the switch was done by Leo Perth, Jr., a journeyman lineman employed by Tyee.

In fact, when the line was energized the plaintiff and others of his crew were standing on the ground and were working with and had hold of a dead line coming down from the top of the pole. As the dead line descended from the top of the pole to the ground it was in fact in contact with the underbuild line at the point where it traversed it. Thus when the underbuild line was energized the dead line served as a ground. The power flowed down it and into and through the plaintiff and the other workmen who were holding it. Plaintiff thereupon sustained the injuries leading to this action.

The complaint seeks to recover both under the Employer's Liability Act and on grounds of common law negligence. At the conclusion of plaintiff's case the court granted defendant's motion for judgment of involuntary nonsuit. The plaintiff appeals therefrom.

He contends that the Employer's Liability Act does apply here because there was evidence from which a jury might find that the employees of Tyee, and par-

ticularly Mr. Young, were "adoptive" employees of Portland General Electric Company.

He contends that the provision of the contract that "* * * Any switching must be done by Portland General Electric Company crews," placed all aspects of this activity under the defendant's control within the meaning of the Employer's Liability Act, ORS 654.305, including the determination of whether or not the Tyee crew was in a place of safety at the time the line was energized.

■ We have repeatedly held that a plaintiff may recover under this Act against one who did not directly employ him "* * * on the ground that the plaintiff becomes the defendant's employee in the sense that the plaintiff is performing work on a project of which defendant's operations are an integral part. * * *" *Thomas v. Foglio,* 225 Or 540 at 545, 358 P2d 1066 (1961). ORS 654.305. The court there pointed out that both the Employer's Liability Act and ORS 656.154 of the Workmen's Compensation Act "* * * are cast in terms of the defendant's control over the work out of which the injury arises." *Thomas v. Foglio,* supra, at 546. The difficult problems are found in determining first what constitutes participation and second, what constitutes control within the meaning of the Employer's Liability Act.

In the case at bar there was joint participation by the defendant with employees of Tyee at the pole where the switching took place. There was also joint control of activities at that pole by the defendant with respect to the act of switching, both under the contract and in fact, since Mr. Lewis gave the order to "heat up the line."

Neither the plaintiff nor any member of his crew, however, were present at or within view of the switch-

ing pole. They were a half-mile away. Plaintiff was in all respects solely under the control of Mr. Young, his foreman. No employee of defendant was present at or in any way participated in the work plaintiff and the other members of the Tyee crew were performing. The work plaintiff was doing involved no common activity with defendant or its employees. The defendant likewise under the contract had no right to exercise control over plaintiff or his crew with respect to the performance of any of the work upon which they were engaged at the time and place of the accident. Nor did it exercise any.

Tyee's contract and the work upon which it was then engaged dealt only with replacement of the principal conductors located upon the upper part of the poles. Tyee's connection with the underbuild was limited to the fact that it also was strung along the same poles as the wires Tyee was replacing were on. The contract required Tyee to do this work with the underbuild energized so that Portland General Electric customers would experience a minimum of interruption. The flow of power in the underbuild was only interrupted to assist Tyee in accomplishing the work it had contracted to do.

■ The fact that defendant wanted its customers to receive power during the noon hour created no common purpose with Tyee in carrying on the latter's work. Nor did it involve the plaintiff in the performance of work in which the defendant was involved as an integral part. Here the defendant had no control over the work out of which the injury arose, as is contemplated by the Act.

The umbrella of joint participation and control does not extend its penumbra over an activity with respect to the accomplishment of which there is no

community of purpose between the work being done by the employer of the injured workman and a defendant "who did not directly employ him." Certainly the evidence offered here is sufficient to establish serious violations of the Employer's Liability Act. But these were committed by Tyee, not the defendant. It was the negligent act of Tyee through Mr. Young in telling the defendant to "go ahead, heat up the line.", which brought the electricity to the plaintiff. Furthermore the defendant here was not furnishing the electricity for use by Tyee at all, but solely for its own customers.[1]

Although defendant did control the re-energizing of the underbuild, it had neither knowledge of nor control over the fact that the dead line in the hands of the plaintiff and his fellow crew members coming from the top of the pole was resting against the underbuild line half-a-mile away. The effective negligence here was that of Jack Young, the Tyee foreman.

Plaintiff recognizes this and in his brief submits that Mr. Young "should be considered a borrowed employee for the purpose of making the inspection for Don Lewis and PGE's liability could be predicated upon Young's negligence."

In effect he urges that under the loaned or "adopted employee" doctrine, Mr. Young, his foreman, became an "employee" of the defendant, Portland General Electric Company, with respect to the act of switching on the power. He further contends that this results both from the aforementioned contract provision relating to switching, and from the fact that a Tyee lineman threw the switch pursuant to Mr. Lewis's order.

---

[1] Dresser, Employers' Liability 60, § 9.

It becomes necessary, therefore, to consider and determine whether or not the loaned employee doctrine can be applied to this case.

In *Penrose v. Mitchell,* decided this day, we had occasion to discuss at length this doctrine. It is unnecessary here to repeat it. We there held that an employee of a third party employer did not become an adoptive employee of the employer of the injured workman merely because they were engaged in a common enterprise.

■ We held there that the decisive element was the nature and degree of control exercised by one employer over the employee of the third party. Here Jack Young was foreman of the Tyee crew. At no time did the defendant have control or the right of control over the work being done by Tyee nor had it any right to control Young in the manner of performing it. The defendant had no right to direct Young in the manner or methods employed by him "in making the inspection" to determine if the members of his own crew were in a place of safety—any more than it had control over or authority to direct Young's activities in providing proper grounding or insulation of the particular wire plaintiff was holding at the time of the injury. Tyee, however, most certainly did have this authority and responsibility. We are of the opinion that the trial court correctly determined that Young was not an adoptive employee of the defendant.

■■ Plaintiff has also challenged the granting of the nonsuit on the ground that there was evidence of common law negligence sufficient to take the case to the jury. The existence of a duty owed by a defendant to a plaintiff and its negligent breach are essential to such an action. For the reasons heretofore stated

we think the trial court correctly determined that no duty owed by the defendant to this plaintiff was breached.

It follows then that the judgment is affirmed.