Argued and submitted September 4, 1986, Court of Appeals affirmed, judgment of circuit court reversed and remanded March 17, 1987

# FAZZOLARI,
*Respondent on Review,*

*v.*

# PORTLAND SCHOOL DISTRICT NO. 1J,
*Petitioner on Review.*

(TC A8212-07615; CA A34098; SC S32918)

734 P2d 1326

James N. Westwood, Portland, argued the cause for petitioner on review. With him on the petition were William B. Crow, and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Willard E. Merkel, Portland, argued the cause and filed a response on behalf of respondent on review.

Edward C. Harms, Jr., of Harms, Harold, Leahy & Pace, Springfield, filed a brief *amicus curiae* on behalf of Oregon School Boards Association.

Chris L. Mullman, of Ragen, Roberts, Tremaine, Krieger, Schmeer, O'Scannlain & Neill, Portland, filed a brief *amicus curiae* on behalf of Lake Oswego School District No. 7J.

John C. Caldwell, of Hibbard, Caldwell, Bowerman, Schultz & Hergert, Oregon City, filed a brief *amici curiae* on behalf of North Clackamas School District No. 12 and Oregon City School District No. 62. With him on the brief was Nancy S. Tauman, Oregon City.

LINDE, J.

## LINDE, J.

When plaintiff, then a 15-year-old high school student, was about to enter her school building a few minutes before 7:00 a.m. on May 21, 1982, an unknown assailant grabbed her from behind and dragged her to some nearby bushes, where he beat and raped her. In an action against the school district to recover damages for her injuries, plaintiff claimed that school administrators were negligent in failing to provide proper supervision of students on the school's grounds during hours when the school was open to students, in failing to provide security personnel when district administrators knew of previous similar attacks and could have foreseen the danger of such attacks on students at plaintiff's school, in failing to warn students after similar attacks had been perpetrated in the area near the school and in failing to trim or remove bushes offering concealment to an assailant. The circuit court let the case go to trial but granted defendant's motion for a directed verdict at the end of plaintiff's evidence.

On plaintiff's appeal from the resulting judgment, the Court of Appeals reversed and remanded the case for a new trial. *Fazzolari v. Portland School Dist. No. 1J,* 78 Or App 608, 717 P2d 1210 (1986). The majority of the panel held that the trial court erred in ruling as a matter of law that a previous attack on a woman on the school grounds before school hours did not make the attack on plaintiff reasonably foreseeable. Presiding Judge Buttler dissented on grounds that the school district's duty of due care to protect its students against foreseeable harm does not extend to times when a student is not engaged in recognized school activities. *Fazzolari, supra,* 78 Or App at 616, 618, 717 P2d 1210. We allowed the school district's petition for review along with petitions in two other cases, also decided today, that involve similar issues. *See Donaca v. Curry County,* 303 Or 30, 734 P2d 1339 (1987), *Kimbler v. Stillwell,* 303 Or 23, 734 P2d 1344 (1987). In this case, we affirm the decision of the Court of Appeals.

## I. THE USES OF "DUTY"

The problem common to today's cases is the relation of foreseeability and duty as elements of liability in negligence law. As Justice O'Connell observed in *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 607, 469 P2d 783 (1970), it is a

problem that has produced "a vast amount of legal literature" without leading to an agreed scholarly analysis. We review the evolution of this state's approach to the problem in some detail before turning to the specifics of each case.

Foreseeability is a judgment about a course of events, a factual judgment that one often makes outside any legal context. It therefore ordinarily depends on the facts of a concrete situation and, if disputed, is decided as an issue of fact. "Duty" expresses the formal link between factual conduct and legal liability; its content must be located in the law, not in facts nor in morals, manners, or other values unless these are incorporated into law. When "duty" refers to legally obligatory conduct, it serves a person injured by noncompliance as a premise to claim a legal remedy; at other times the concept is invoked defensively to limit the reach of liability even though harm was caused by conduct falling short of a legal obligation. *See e.g., Nylander v. State of Oregon,* 292 Or 254, 257-58, 637 P2d 1286 (1981)(discussing "duty" as a legal premise to potential liability); *cf. Thompson v. Weaver,* 277 Or 299, 560 P2d 620 (1977)(discussing defensive use of "duty"). In either case, "duty" by definition appears as a legal issue and, if disputed, is decided by the court.

This neat division of issues is unproblematic when the substance and scope of a duty are found in legislation or in a particular common law source. But when the law (for instance negligence law) defines a duty by reference to the foreseeability of events, the questions who decides what, at which stage of litigation, and with what precedential effect become problematic, as today's cases show. A rather extensive statement in this case seems preferable to fragmented conclusions in each of today's opinions.

At the time the Oregon Territory adopted the "common law of England,"[1] the common law had no broad theory of liability for unintended harm resulting from a failure to take due care toward members of the public generally but only liability for harm resulting from negligent conduct in various callings and relationships. Men had particular duties but no general duty. *See* 3 Harper, James & Gray, The Law of Torts

---

[1] *See* Act of July 5, 1843, Art 12, *reprinted in* Harris, *History of the Oregon Code* (pt. 1), 1 Or L Rev 129, 135 (1922); Act of June 27, 1844, Art III, § 1, *reprinted id.* at 138.

107-114 (2d ed 1986)(citing other literature); Winfield, *Duty in Tortious Negligence,* 34 Colum L Rev 41 (1934). "Negligence," "fault," and "tort" also did not describe general theories of common-law liability in this country before the 1870s; the formula that liability followed generally from harm caused by breach of a duty of care gained currency only after 1880, stimulated in part by the theoretical writings of Oliver Wendell Holmes, Jr. *See* White, Tort Law in America 12-19 (1980).[2] The first Oregon case reciting the formula was *Kennedy v. Hawkins,* 54 Or 164, 167, 102 P 733 (1909).

The elements of this formula met critical examination early in this century. Professor Francis H. Bohlen, who became the first reporter of the American Law Institute's Restatement of Torts, offered this recapitulation of negligence law:

> "* * * To constitute actionable negligence there must be: (1) A duty to the plaintiff to observe care. This depends upon the probability of injury if care be not taken. (2) A standard of care not observed (constituting the breach). This again depends upon the anticipation of probable danger. (3) Injury suffered in consequence. This, it is submitted, must be judged by the rules governing responsibility for the effect of a breach of any obligation imposed by law and not assumed voluntarily by the parties." (Footnote omitted.)

Bohlen, *The Probable or the Natural Consequence as the Test of Liability in Negligence* (pt. 1), 40 Am L Register (n.s.) 79, 86 (1901), *reprinted in* Bohlen, Studies in the Law of Torts 9-10 (1926). In this summary statement, foreseeability of harm to another defined both duty and its breach, which seems redundant.[3] Professor Winfield, in the article already cited, ques-

---

[2] Professor White notes:

"James Barr Ames's Torts casebook, which appeared in 1874, contained no negligence cases. By 1880, the need for a generalized treatment of negligence had begun to be perceived. Thomas Cooley's treatise still devoted a chapter to 'Wrongs from Non-Performance of Conventional and Statutory Duties' and included negligence among them. But Cooley also recognized that 'in every relation of life * * * some *duty is imposed for the benefit of others*' and, in a separate chapter, he discussed 'the general principles which must govern [when] * * * one has been injured by the neglect of another to observe due care.' " (Footnotes omitted.)

White, Tort Law in America 18 (1980).

[3] Another critique of negligence began:

"Negligence is often defined as consisting of a breach of duty. That is wrong.

tioned whether "duty" served any necessary or useful function in common-law negligence cases, noting that it had entered the formula through decisions denying recovery because suppliers of defective equipment had breached duties to someone other than plaintiff, a fateful *non sequitur*.[4]

Nonetheless, the "duty" concept was retained in negligence law. Bounds of liability must be stated somehow if the law was not to make one insure the world at large against all harm from one's negligent conduct.[5] Although negligent conduct caused harm in fact, the law might deny liability if this

---

The duty in such a case can be defined only as a duty to use care, *i.e.*, not to act negligently; and to define the duty so, and then to define negligence as consisting of a breach of the duty, is to define in a circle."

Terry, *Negligence*, 29 Harv L Rev 40, 40 (1915). Terry postulated "a negative duty of due care of very great generality, resting upon all persons and owed regularly to all persons, not to do negligent acts." *Id.* at 52.

[4] Another writer called the "duty to take care" an "unnecessary fifth wheel on the coach, incapable of sound analysis and possibly productive of injustice." Buckland, *The Duty to Take Care*, 51 Law Q Rev 637, 639 (1935).

Professor Winfield blamed the *non sequitur*, that a defendant was not liable to an injured person because his "duty" ran to another person, on dicta in *Winterbottom v. Wright*, 10 M & W 109, 152 Eng Rep 402 (Ex 1842) (decided just as Oregon adopted the common law of England), in which plaintiff, an injured coachman, had pled the contractual duty of the supplier of the coach to a third party. Duty was "clinched" in negligence law, Winfield wrote, in *Heaven v. Pender* [1883] 11 Q B D 503, another case of a workman injured by defective equipment furnished by defendant to his employer, which stated the rule to be:

"[W]ant of attention amounting to a want of ordinary care is not a good cause of action, although injury ensue from such want, unless the person charged with such want of ordinary care had a duty to the person complaining to use ordinary care in respect of the matter called in question. Actionable negligence consists in the neglect of the use of ordinary care or skill towards a person to whom the defendant owes the duty of observing ordinary care and skill, by which neglect the plaintiff, without contributory negligence on his part, has suffered injury to his person or property. * * * "

*Id.* at 507. This formulation was stated by one member of the court, who later allowed that it was too broad, *see Le Lievre v. Gould* [1893] 1 Q B 491; but the notion that a negligent supplier's breach of a duty to his immediate customer somehow foreclosed responsibility toward a foreseeably injured third party was substantially modified by *McPherson v. Buick Motor Co.*, 217 NY 382, 111 NE 1050 (1916) (Cardozo, J.), and eventually superseded by modern products liability law.

[5] "Probably any system of liability for accidental injuries, whether designed primarily to punish or deter wrongdoers or to compensate victims and distribute their loss according to principles of insurance, would have to devise limits to the kinds and the items of injury for which there could be recovery.* * *"

3 Harper, James & Gray, The Law of Torts 650, § 18.1 (2d ed 1986).

harm did not seem "natural" and "proximate" but "remote," words which again focused on foreseeability in a factual setting. So did the apparently widest statement of common-law negligence, in *Donoghue v. Stevenson,* [1932] A C 562 (Scot), that "[y]ou must take reasonable care to avoid acts or omissions which you can reasonably foresee would be likely to injure your neighbour." *Id.* at 580. *Donoghue* went on to define one's neighbors as "persons who are so closely and directly affected by my act that I ought reasonably to have them in contemplation as being so affected when I am directing my mind to the acts or omissions which are called in question." *Id.* Foreseeability, too, was the focus of Chief Judge Cardozo's formulation in *Palsgraf v. Long Island R.R. Co.,* 248 NY 339, 162 NE 99 (1928), which denied liability unless the plaintiff and the injurious event were both within the foreseeable risks of defendant's negligent conduct.[6] But because common-law negligence traditionally has excluded some categories of quite predictable injuries and claimants (familiar illustrations include solely economic or psychic injuries, injuries due to a bystander's failure to rescue and injuries to trespassers), courts still find lack of a "duty" a convenient label for these categorical rulings.

The Restatement of Torts did not list "duty" as an indispensable element of a negligence claim. The Restatement's formula required an injury to an interest protected against unintentional invasion and to a person within the class foreseeably at risk, but it reserved the word "duty" for a

---

[6] In *Palsgraf v. Long Island R.R. Co.,* 248 NY 339, 162 NE 99 (1928), a railroad's employees helping a passenger to board a train caused him to drop a package that proved to contain fireworks, which exploded and caused some scales to fall and injure another passenger waiting on the station platform. The majority opinion stated:

"The conduct of the defendant's guard, if a wrong in its relation to the holder of the package, was not a wrong in its relation to the plaintiff, standing far away. Relatively to her it was not negligence at all. Nothing in the situation gave notice that the falling package had in it the potency of peril to persons thus removed. Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right.

"* * * * *

"What the plaintiff must show is 'a wrong' to herself, *i.e.,* a violation of her own right, and not merely a wrong to someone else, nor conduct 'wrongful' because unsocial, but not 'a wrong' to anyone."

*Id.* at 341, 343-44, 162 NE 99. In a dissent, Andrews, J., and two others treated the problem as one of "proximate cause" to be left to the jury.

series of sections describing duties of protective action arising in várious situations and relationships.[7] Still, the formal question toward whom one has a duty of care was easily confused with the content of that duty (particularly when something outside tort law defined the required conduct) and with the range of compensable harm. *See, e.g.,* Salmond, The Law of Torts 195-202 (R Heuston 17th ed 1977).

Meanwhile, Dean Leon Green deprived negligence theory of its other verbal crutch for confining liability by showing that "proximate cause" was not an issue of factual causation but a hardly disguised value judgment, though this formula, too, survived in practice. Equally, he wrote, the abstract duty to use reasonable care meant little until someone specified that a particular defendant owed a particular plaintiff some specific duty, and this could rarely be specified before the events have transpired and are before a court for decision. Green, *The Duty Problem in Negligence Cases* (pt. 1), 28 Colum L Rev 1014, 1025 (1928). That view atomized the concept. It made "duty" a relation specific to each defendant and injured party, denying responsibility even though defendant's conduct fell below the obligatory standard of conduct to others; to paraphrase the words of the *Palsgraf* majority, negligence required "a wrong in its relation to the plaintiff" rather than "with reference to some one else." 248 NY at 341, 344. It also deprived "duty" of its ordinary meaning as obligatory conduct at the time one acts or fails to act, apart from any consequences. Green found the crux of negligence law, rather, lay in the allocation of inescapable value judgments between judges and juries.[8] Arguments about defendant's duty toward

---

[7] *Compare* Restatement of Torts § 281 (1934)(elements of a cause of action for negligence) *with* §§ 315-322 (listing duties to control conduct of third persons, duties to aid others, and duties for services gratuitously rendered or undertaken). This scheme remains unchanged in the second edition of the Restatement.

The Restatement's "black letter" formula was phrased in terms of a legal result ("is subject to liability") rather than a premise ("duty"), although "duty" showed up in the comments. *But see* Restatement (Second) Torts §§ 328A-328D on procedure, where the otherwise consistent usage was compromised to the extent of using "legal duty" to allocate issues between court and factfinder (assumed in those sections to be a jury.)

[8] Green's major writings on these themes were Green, Rationale of Proximate Cause (1927) and Green, *The Duty Problem in Negligence Cases* (pts. 1 & 2), 28 Colum L Rev 1014 (1928), 29 Colum L Rev 255 (1929), *reprinted in* Green, Judge & Jury

the injured party claim that judgment for the court.

Later writers have started from these insights. Neither Prosser & Keeton, The Law of Torts (5th ed 1984), nor Harper, James & Gray, The Law of Torts (2d ed 1986), begin the analysis of negligence with the search for an affirmative element of duty. Both treatises reach the subject of "duty" only as a limiting concept, invoked to confine the reach of responsibility for harm caused by negligent conduct, that is to say, by conduct that otherwise falls short of one's obligation to avoid undue risk to someone's protected interest.

Prosser and Keeton write of the concept of "relative duty": "Its artificial character is readily apparent * * *. The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." Prosser & Keeton, *supra* at 357 (footnote omitted). They continue:

> "[Duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself. Yet it is embedded far too firmly in our law to be discarded, and no satisfactory substitute for it, by which the defendant's responsibility may be limited, has been devised. But it should be recognized that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." (Footnotes omitted.)

*Id.* at 358. Similarly, Harper, James & Gray first set out the nature of negligence liability for harm caused by failure to meet general or specific standards of conduct (chapters XVI and XVII) before turning to the "scope of duty" as a device for limiting one's exposure to liability for such harm (chapter XVIII).

The scope of liability for negligently caused harm

---

38-152 (1930).

Green described as "the strangest chapter in all tort law" the apparent identity of the foreseeability or "anticipation of harm" formulas in defining the duty to take care, the negligence or breach of the duty of care, and the causal relation. He observed that to leave "the delimitation of the law's protection" to the jury on the facts of each case "would end any possible hope of law crystallization. * * * Thus it would seem that analysis has played itself false, so that a case is seemingly to be subjected thrice to the ponderous process of the 'foreseeability' formula." Green, Judge & Jury 66-67 (1930). But in fact, he reassured his readers, judges would and should let only doubtful cases go to the jury, and the seeming duplication of tests was only a confusion of "legal theology." *Id.* at 69.

might extend to all harm that in fact resulted from the negligence, or it could be confined to those risks that made the conduct negligent: "The risk reasonably to be perceived defines the duty to be obeyed," as Cardozo put it in *Palsgraf.* 248 NY at 344. By confining liability to those risks that the defendant was obliged to minimize, the *Palsgraf* rule demanded a closer link of negligence to its premise of fault, if only the attenuated fault of impersonal corporate defendants and objective standards of foresight and due care. But the *Palsgraf* dissenters' contrary choice between a blameless plaintiff and a defendant whose conduct has been socially substandard, faulty, toward anyone, has been defended on grounds that any resulting loss should fall on the defendant. Prosser & Keeton, *supra* at 287.[9]

In sum, duty plays an affirmative role when an injured plaintiff invokes obligations arising from a defendant's particular status or relationships, or from legislation, beyond the generalized standards that the common law of negligence imposes on persons at large. In cases based solely on common-law negligence, "no-duty" is a defensive argument asking a court to limit the reach of these generalized standards as a matter of law. Duty remains a formal element of the plaintiff's claim only in the sense that the plaintiff loses if the defendant persuades a court to phrase such a limit in terms of "no duty."[10]

---

[9] Similarly, Professor Fleming observes that the logical argument for limiting the extent of liability as well as the negligence standard to foreseeable consequences is "less than compelling," because aggregate risks may make conduct negligent even though the specific risk to the particular plaintiff might in isolation be neither sufficiently unreasonable nor foreseeable. Fleming, The Law of Torts 196 (5th ed 1977).

The analysis and holding in *Palsgraf* and the abstractions of the Restatement were criticized from another perspective in Noonan, Persons and Masks of the Law 111-51 (1976).

[10] "It may even now be said that the onus is on the defendant to show that the case is not within the neighbor principle, rather than on the plaintiff to show that it is." Salmond, The Law of Torts 200 (R Heuston 17 ed 1977), *citing Dorset Yacht Co. v. Home Office,* [1970] A C 1004, 1027.

For the role of formal concepts in negligence law, see Smith, *Rhetoric and Rationality in the Law of Negligence,* 69 Minn L Rev 277, 294-97 (1984). For "no-duty," see Rabin, *The Historical Development of the Fault Principle: A Reinterpretation,* 15 Ga L Rev 925, 948-56 (1981).

## II. DEVELOPMENT OF OREGON LAW

This court's opinions in negligence cases often have followed conventional terminology. The earliest opinions discussed liability for harm resulting from neglect of particular duties arising from various callings and relationships. *See, e.g., Anderson v. Bennett,* 16 Or 515, 532, 19 P 765 (1888)(master's duty to servant to provide a reasonably safe workplace); *Skottowe v. O.S.L. Etc. Ry. Co.,* 22 Or 430, 442-43, 30 P 222 (1892)(duties of public carriers). Later opinions began to develop a theory of liability for unintended harms resulting from a failure to take due care toward members of the public generally. *See Shobert v. May,* 40 Or 68, 69, 66 P 466 (1901)(negligence is "a failure to exercise that degree of care and forethought which a prudent person might be expected to use under similar circumstances"). The "duty" formula, in its now familiar form, was first stated in *Kennedy v. Hawkins, supra.* One of several later decisions concerning the imperfect coexistence of railroads and free-ranging livestock typically recited the formula from opinions of other courts:

"It may be stated, that a necessary element of actionable negligence is the existence of a duty on the part of defendant to protect the plaintiff from the injury complained of. Negligence is the breach or omission of a legal duty. It includes two subordinate ideas—duty and the performance of that duty." (Citations omitted.)

*Todd v. Pacific Ry. & Navigation Co.,* 59 Or 249, 251-52, 117 P 300 (1911). Liability for the loss of a horse that wandered onto a railroad trestle depended on the existence of a duty to prevent it from doing so; once a fencing statute was held inapplicable, neither the railroad nor the owner of stock had any duty to fence animals in or out. *Id.* at 252-54, 117 P 300.

Oregon cases also employed the conventional "proximate cause" terminology to express the limits of the harm for which a negligent defendant would be liable. *See, e.g., Hartvig v. N.P.L. Co.,* 19 Or 522, 25 P 358 (1890)(wrongdoer liable for injury resulting from "natural and probable consequences" of wrongful act); *see also Miami Quarry Co. v. Seaborg Packing Co.,* 103 Or 362, 204 P 492 (1922)(careless mooring of barge broken up in storm held "proximate cause" of loss of piledriver dislodged by floating barge section); *Birks v. East Side Transfer Co.,* 194 Or 7, 241 P2d 120 (1952)(wrongdoer liable

for "proximate results" of violation of duty). But after Justice O'Connell in 1963 criticized this way of putting to the fact-finder a limitation of legal liability as an issue of cause and effect, *Dewey v. A. F. Klaveness & Co.,* 233 Or 515, 519, 379 P2d 560 (1963)(O'Connell, J., concurring), this court eventually disapproved further use of the "proximate cause" formula. *See* Note, 45 Or L Rev 124 (1966)(reviewing cases).[11]

Justice O'Connell stated the revised analysis for the unanimous court in *Stewart v. Jefferson Plywood Co., supra.* Stewart was a volunteer helping to fight a fire that originated at defendant's sawmill. He was sent to control sparks on the roof of a neighboring warehouse belonging to another company and was injured when he fell through a skylight opening that had been covered by a piece of plastic and was obscured by dust. The court affirmed his recovery of damages, holding that the risk of falling through a hidden skylight while protecting a neighbor's roof was not so untypical of risks created by a negligently caused fire as to withdraw the case from the jury.

There was ample evidence, the court noted, that defendant's worker carelessly caused the fire that in fact led to plaintiff's injury; only defendant's legal responsibility for the injury was at issue. The court would analyze such issues not "under the rubric 'proximate cause' or 'legal cause' [but] as part of the definition of negligence." *Id.* at 606. As far as "negligence" rests on a standard of reasonable conduct, the issue ordinarily can be left to the jury, although at the outer margins of debatable conduct a court is obliged to say "that the conduct does or does not meet the standard." *Id.* at 608. Legal fault is predicated on "blameworthiness" in the sense that a defendant's conduct "is, according to community standards, generally considered as creating a danger to persons in the situation in which the plaintiff finds himself." *Id.* As a corollary of this definition, common-law negligence imposes liability for harms of the general kind and to plaintiffs of the

---

[11] Later cases rejecting "proximate cause" include *Sandford v. Chev. Div. Gen. Motors,* 292 Or 590, 605-06, 642 P2d 624 (1982); *Simpson v. Sisters of Charity of Providence,* 284 Or 547, 555, 588 P2d 4 (1978); *Connolly v. Bressler,* 283 Or 265, 268 n 1, 583 P2d 540 (1978); *McEwen v. Ortho Pharmaceutical,* 270 Or 375, 385 n 7, 528 P2d 522 (1974).

general class placed at risk, harms that a reasonable fact-finder, applying community standards, could consider within the range of foreseeable possibilities. *Id.* at 609.

Several things deserve to be noted about the court's opinion in *Stewart v. Jefferson Plywood Co.*

First, the opinion made no reference to "duty." Its main purpose was to separate foreseeability (what prospectively might happen) from causation (what retrospectively did happen) as a limit on the scope of liability. The *Stewart* opinion located that limit in a "community" understanding of fault, which it postulated rather than documented, that one is at "fault" only if one's conduct causes harm within the ambit of foreseeable risks. *Stewart* did not follow *Palsgraf* to translate "unforeseeable risk" into a relation of "no duty." Thus it avoided phrasing as an *a priori* premise, absence of duty, what really only names a legal conclusion drawn from a factual predicate, unforeseeable risk.

Second, the *Stewart* opinion acknowledged that "[w]hether the harm in a particular case is deemed foreseeable may depend upon the manner in which we describe 'harm.'" *Id.* at 610. This is even more true of "risk." *Stewart* itself made clear that the court meant generalized risk of the types of incidents and injuries that occurred rather than the predictability of the actual sequence of events. One reasonably might foresee that a fire might place others seeking to protect a neighboring building in danger of injury by falling as well as by being burned, even though one might not foresee that the fall would be through an insecurely covered and hidden skylight. So, at least, a jury might find. *Id.* at 610-11.

Third, the *Stewart* court postulated that the fire resulted from the failure of the defendant's employee to exercise reasonable care. The opinion sought to formulate "the line at which the defendant's liability ends," not where it began. *Id.* at 607. If plaintiff's injuries fell within the foreseeable dangers of a carelessly caused fire, negligence otherwise was made out. There was no discussion, again, of a duty toward others to be careful not to cause a fire; if nonstatutory factors other than foreseeability played a role, presumably it would be in deciding what would be reasonable care under the circumstances. As Professor Vetri noted in reviewing *Stewart,* when foreseeable risk is a measure of faulty conduct and also

of liability to a plaintiff, it is important that all foreseeable risks of harm to other classes of persons be considered in evaluating the reasonableness or unreasonableness of defendant's conduct.[12]

So understood, *Stewart v. Jefferson Plywood Co.* made foreseeable risk the test both of negligent conduct and of liability for its consequences without phrasing the test in terms either of causation or of duty. Causation could be an issue only if there were grounds for legitimate dispute whether a defendant's conduct in fact contributed to the events that harmed the plaintiff, as cause and effect might be described outside any legal context; in many cases there would be no causation issue to put to a factfinder at all. Duty, however, has continued to play a role in the opinions, not always consistently.

*Brennen v. City of Eugene,* 285 Or 401, 591 P2d 719 (1979), is an example. An ordinance required an applicant for a taxicab license to submit certificates of liability insurance in specified amounts. A city official issued a taxicab license to an applicant with inadequate insurance, and an injured passenger sued the city for damages that he was unable to collect from the taxicab operator, alleging that the license was negligently issued. Lower courts dismissed the complaint on the grounds that the city either was immune from suit or did not by regulating the taxi industry thereby insure the public against injury caused by insufficiently insured taxi operators.

This court's opinion began by reciting the formula of prior opinions that in negligence actions, "plaintiff must

---

[12] Professor Vetri wrote:

"[I]n jurisdictions which isolate the scope of liability issue (proximate cause) from the breach of duty issue, it is possible to separate the issues analytically and conclude that there were foreseeable risks of harm to third parties and that these risks made the conduct unreasonable (negligent), leaving the further question of whether there was a foreseeable risk of harm to the plaintiff of the general kind which he or she suffered to be decided subsequently. [Citing *Palsgraf* as an example.] * * * In states like Oregon which deal with the foreseeability questions under the breach of duty element, it is important to recognize that the jury should consider *all* foreseeable risks of harm in making the unreasonableness balance and not be restricted merely to the risk related to the plaintiff." (Emphasis in original.)

Vetri, *Tort Markings: Chief Justice O'Connell's Contributions to Tort Law,* 56 Or L Rev 235, 241 n 24 (1977).

allege that defendant owed him a duty, that defendant breached that duty, and that the breach was the cause in fact of some legally cognizable damage to plaintiff." *Id.* at 401. The formula at best is legal shorthand, because a complaint must allege facts, not legal theories. At worst it obscures the question whether a complaint invokes a special duty to the plaintiff arising from a particular status, relationship, or external standard, or relies only on the general common law governing liability for negligence toward strangers. *See Chartrand v. Coos Bay Tavern,* 298 Or 689, 696 P2d 513 (1985); *McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977), *cf. Bassick v. P.G.E. Company,* 246 Or 498, 426 P2d 450 (1967).[13]

*Brennen*'s "duty, breach, cause" sequence should not be routinely recited as the formula for every negligence case. In *Brennen,* the city in fact had adopted a particular standard, in the form of an ordinance, for the benefit of those whose persons or property might be injured by the operation of an underfinanced taxicab, and it had assigned its agent a duty to be performed "so as to avoid creating a foreseeable risk of harm to others." 285 Or at 407. *Brennen* quoted from *Mezyk v. National Repossessions,* 241 Or 333, 336, 405 P2d 840 (1965), Prosser's observation, following Green, that "duty" is simply "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Brennen,* 285 Or at 406, *quoting* Prosser, The Law of Torts 333 (3d ed 1964).[14] The quotation does

---

[13] *McEvoy v. Helikson* involved a true duty imposed on defendant by a court order. *Chartrand v. Coos Bay Tavern* identified three theories for a damage action by a plaintiff injured by an intoxicated driver who had been served alcohol by defendant tavern owner: A common-law negligence action without reference to any statutory duty, a negligence action with a standard of care defined by the liquor control laws, and a direct statutory tort based on a statute implicitly recognizing civil liability. 298 Or at 695, 696 P2d 513.

In *Bassick v. P.G.E. Company,* Bassick was injured when the power company resumed transmitting electricity through a line that touched a different line on which Bassick was working for another employer, and his complaint relied both on the Employers Liability Act and on common-law negligence. After extensively reviewing and rejecting plaintiff's theory under the statutes, the court's opinion disposed of the separate common-law claim in one cryptic sentence: "For the reasons heretofore stated we think the trial court correctly determined that no duty owed by the defendant to this plaintiff was breached." 246 Or at 505-06, 426 P2d 450.

[14] Interestingly, the fifth edition cites *Brennen* for the sentence that *Brennen* had quoted from the earlier edition. Prosser & Keeton, The Law of Torts 358 (5th ed 1984).

not affirm the importance of "duty," for which briefs sometimes cite it, but rather dismisses its analytic usefulness, at least in the absence of policy embodied in a law.

Some recent opinions on common-law liability for unsafe conditions on land have continued to refer to "duties" accompanying the status of a possessor, although the Restatement of Torts did not. *See, e.g., Taylor v. Olsen,* 282 Or 343, 578 P2d 779 (1978); *Wilsey v. Campbell,* 255 Or 420, 467 P2d 964 (1970); *cf. Woolston v. Wells,* 297 Or 548, 553, 687 P2d 144 (1984). *Compare* Restatement (Second) Torts §§ 328E-387 (1965). Other opinions in purely common-law cases have referred to a duty "in general" owed to "every person in our society" to take reasonable care to avoid foreseeable risk of injury, without meaning to depart from *Stewart v. Jefferson Plywood Co. See Kirby v. Sonville,* 286 Or 339, 344, 594 P2d 818 (1979); *see also Mezyk v. National Repossessions, supra.*

Nomenclature is not everything, and stray references to a nonspecific "duty" not to cause unreasonable risk of foreseeable injury to others may do little harm when all sides are familiar with the *Stewart* analysis. Legal verbiage is resistant to change; we still occasionally see lawyers refer to "proximate cause." But nomenclature is more than style. As set out earlier, phrasing a conclusion in a particular case in terms of "duty" or "no duty," without reference to any external standard, tends to turn into an apparent rule of law what may be only a determination concerning foreseeability in the circumstances of that case.[15]

The point is stated more accurately in *Cain v. Rijken,*

---

[15] *Slattery v. Drake,* 130 Or 693, 281 P 846 (1929), shows the effort to confine within legal precedents the "attractive nuisance" exception to the rule denying negligence liability to trespassers. Denying recovery to a child known to frequent a pile of bridge timbers owned by defendant, the court wrote:

"What duty, if any, did the defendant owe to this little girl who was a technical trespasser upon his property?

"* * * * *

"[Application of the attractive nuisance doctrine] is a preliminary question of law for the court to decide. The great weight of authority is that such doctrine has no application to a pile of lumber or ties." (Citations omitted.)

*Id.* at 697, 699. A dissent maintained that defendant's knowledge that the particular child often played near this pile of timber sufficed to require defendant to take ordinary care to prevent her injury. *Id.* at 705 (Coshow, J., dissenting).

300 Or 706, 717 P2d 140 (1986), which involved a wrongful death claim against a hospital for negligently allowing a psychiatric patient to drive an automobile, with fatal consequences. The hospital contended that it "owed no duty to" the victim of a collision caused by the patient's reckless driving. After quoting from *Stewart v. Jefferson Plywood Co.* on the role of foreseeability in defining the elements and the scope of liability for common-law negligence, Justice Jones wrote for the court:

> "Defendants sometimes deny liability based on this second element by arguing that although they may have breached a duty to someone, it was not a 'duty *to*' the plaintiff. But that argument can be more directly phrased in terms of foreseeability, and perhaps other reasons for extending or limiting the scope of liability for defendant's negligence, than by using the conclusory word 'duty' as a premise."

*Cain v. Rijken, supra,* 300 Or at 715. We held that "sources other than the common law of negligence," namely the statute governing the commitment or release of patients under the jurisdiction of the Psychiatric Security Review Board, imposed a duty on a "community mental health provider" like defendant to use reasonable care to protect the public in leaving a potentially dangerous patient at large. *Id.* at 715. Whether failure to do so foreseeably created a risk of the kind of conduct by the patient and the kind of injuries suffered by the victim were issues to be determined by a factfinder. *Id.*

■ ■ In short, unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff. The role of the court is what it ordinarily is in cases involving the evaluation of particular situations under broad and imprecise standards: to determine whether upon the facts alleged or the evidence presented no reasonable factfinder could decide one or more elements of liability for one or the other party. To quote *Stewart v. Jefferson Plywood Co.*:

> "The jury is given a wide leeway in deciding whether the conduct in question falls above or below the standard of

reasonable conduct deemed to have been set by the community. The court intervenes only when it can say that the actor's conduct clearly meets the standard or clearly falls below it."

255 Or at 607.[16]

## III.  THE PRESENT CASE

In the present case, plaintiff invoked two distinct sources of defendant's duty of care toward her. One theory is the relationship of a school toward its students; the other is its liability as a possessor of land under Restatement (Second) Torts § 344 and the Oregon cases applying that theory.[17] We

---

[16] Although the *Stewart* court, like Dean Green and other American writers since Holmes, emphasized the allocation of functions between the court and the jury as a surrogate for community judgment, English negligence cases are routinely tried without a jury, which is discretionary with the trial court. The court's stated findings of "primary fact" ordinarily are not disturbed on appeal, but its inferences or conclusions may be. *See* Smith & Bailey, The Modern English Legal System, 534-38, 729 (1984); *Ward v. James* [1966] 1 Q B 273. The important theoretical issue remains whether a decision on the facts of one case becomes a rule for similar facts in subsequent cases.

[17] The Restatement (Second) provides as follows:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a)  discover that such acts are being done or are likely to be done, or

"(b)  give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Restatement (Second) Torts § 344 (1965). *See Brown v. J. C. Penney Co.*, 297 Or 695, 688 P2d 811 (1984); *Uihlein v. Albertson's, Inc.*, 282 Or 631, 580 P2d 1014 (1978); *Whelchel v. Strangways*, 275 Or 297, 550 P2d 1228 (1976).

The dissent in the Court of Appeals distinguished these decisions on grounds that public school students are not analogous to customers of business establishments conducted for profit. *Fazzolari v. Portland School Dist. No. 1J*, 78 Or App at 614-15 (Buttler, P.J., dissenting). But standing alone the fact that the service rendered is education would not seem distinctive, nor would the fact that the business inviting customers is not conducted for profit; and the tort claims act negates a fundamental distinction based on the public rather than private operation of the school. ORS 30.265(1).

Because we do not rest this decision on the duties of a possessor of land to its invitees, we do not pursue precedents such as *Peterson v. San Francisco Community College Dist.*, 36 Cal 3d 799, 685 P2d 1193, 205 Cal Rptr 842 (1984), in which plaintiff was an adult student who paid a campus parking fee and was assaulted on a stairway on the school's parking lot, or *Miller v. State*, 62 NY2d 506, 467 NE2d 493 (1984), in which plaintiff was raped when college dormitory doors were left unlocked.

think that the second theory has only marginal relevance in this case apart from the first. There were allegations that defendant negligently failed to trim or remove bushes behind which an assailant might conceal himself, but we agree with the Court of Appeals that there was no evidence connecting the existence of these bushes to plaintiff's injury.

The school district's duty of care toward its student did not arise from the fact that she had stepped onto the district's real property. When no physical condition of the property causes the injury, the duty to students does not differ between one school that has extensive grounds, parking lots, or playing fields and another school whose doors open onto a public sidewalk. It applies to students taken on a school-sponsored field trip as much as on the school's home grounds, though foreseeable risks and reasonable care of course may differ. In *Morris v. Douglas Co. S. D. No. 9,* 241 Or 23, 403 P2d 775 (1965), a class of school children were taken to the beach under the supervision of a teacher, and one child was injured when a wave moved a log on which the child stood. This court affirmed a judgment for plaintiff, holding that it was a question of fact whether those in charge of supervising school children had exercised reasonable care for their protection. *Id.* at 26.

What cases commonly call a school's "duty of supervision" refers not only to a student whose conduct injures the plaintiff but to students who are injured by others or by themselves.[18] It is a special duty arising from the relationship between educators and children entrusted to their care apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm. The compulsory school attendance law, ORS 339.010 to 339.090, virtually mandates that children be so entrusted to a school and, for most families, leaves little choice to which school. The vast majority of students are minors, and school personnel assume a great deal

---

[18] *See* annotation to *Titus v. Lindberg,* 49 NJ 66, 228 A2d 65, 38 ALR3d 818 (1967)(school district responsible to child injured by act of another child). *Cf. Ragnone v. Portland Sch. Dist. No. 1J,* 291 Or 617, 633 P2d 1287 (1981)(adult visitor to school injured by "failure to provide proper supervision" over children playing ball). *See also id.* at 624, 626-28 (Lent, J., concurring), noting the relatively late rise of fault-based "negligence" liability.

of authority over their conduct during the school day.[19] This does not mean that schools, in the absence of statute, are strictly liable for a student's injury on proof of causation alone, but it does mean that negligence toward a student is tested by an obligation of reasonable precautions against foreseeable risks beyond those that might apply to other persons.

■ The scope of this obligation does not exclude precautions against risks of crime or torts merely because a third person inflicts the injury. Another person's crime was once thought to lie beyond a defendant's responsibility on grounds of "proximate cause," *Aune v. Oregon Trunk Railway,* 151 Or 622, 630-31, 51 P2d 663 (1935), but more recent decisions have dealt with the behavior of others, lawful or otherwise, as part of the general analysis of foreseeable risks. *See* cases cited in note 17; *Mezyk v. National Repossessions, Inc., supra; Campbell v. Carpenter,* 279 Or 237, 566 P2d 893 (1977). The Supreme Court of Washington followed the foregoing analysis, based on a school's public-law duty to minor students to anticipate reasonably foreseeable risks of harm, including crimes such as rape, in *McLeod v. Grant County School Dist. No. 128,* 42 Wash 2d 316, 255 P2d 360 (1953).

■ Whether defendant's responsibility extended to precautions against the attack upon plaintiff in this case turns primarily on two issues. First, defendant argues that although schools have such a responsibility toward students, it is limited to the school day, which might be broadly understood as any time when a student is present for a school-sponsored activity. Plaintiff was dropped in front of the school building on her mother's drive to work at 6:50 a.m., more than an hour before classes. This was not exceptional or improper. There was testimony that custodians routinely opened the building before that time and that some teachers and other students were present in the building for preparatory or extracurricular reasons. It cannot be said that the school "had no duty as a

---

[19] Sometimes more authority than anyone has actually delegated to them. *See Neuhaus v. Federico,* 12 Or App 314, 505 P2d 939 (1973); *see also* Goldstein, *The Scope and Sources of School Board Authority to Regulate Student Conduct and Status: A Nonconstitutional Analysis,* 117 U Pa L Rev 373 (1969).

In testimony in this case the administrators acknowledged that the school districts in fact had rules requiring safety information programs for students. The substance of the requirement does not appear in the record.

matter of law" to be concerned about the safety of students arriving at that time, when this is translated to mean that no reasonable factfinder could conclude that a sensible school administration would take some precautions, if not to provide supervision, then at least to warn students and their parents about its absence before a designated hour.

Second, on the issue of foreseeability we agree with the Court of Appeals that the trial court erred in directing a verdict for defendant on grounds that no reasonable factfinder could find the attack on plaintiff to have been a foreseeable risk. The record suggests some confusion as to what a court must find within the range of a factfinder's determination of foreseeability. A defendant can be expected to argue that no one could have foreseen exactly what happened to the plaintiff, in this case, that Tammy Fazzolari would be attacked on the schoolhouse steps and raped at 6:50 a.m. on May 21, 1982. A plaintiff's definition of what a responsible defendant should foresee can be expected to encompass all the animate and inanimate sources of injury in a dangerous world. But foresight does not demand the precise mechanical imagination of a Rube Goldberg nor a paranoid view of the universe. As already noted, *Stewart v. Jefferson Plywood Co.* made clear that the concept of foreseeability refers to generalized risks of the type of incidents and injuries that occurred rather than predictability of the actual sequence of events. In that case, for instance, a factfinder could conclude that the foreseeable risks included physical injury from falling through a roof in protecting a nearby building from fire rather than from being burned by the fire.

Here there was evidence that a woman reportedly had been sexually assaulted on the school grounds 15 days before the attack on plaintiff, and plaintiff attempted to introduce evidence of various other kinds of attacks. Obviously a school's responsibility for students' safety against assault is not limited to the risk of rape, and evidence of foreseeability will differ depending on whether the risk of injury is claimed to be specific to a school, or schools generally, or a neighborhood, or a class of potential victims such as women or particular ethnic groups. *See, e.g., Raleigh v. Independent School Dist. No. 625,* 275 NW2d 572 (Minn 1978); *Lauricella v. Board of Ed. of City of Buffalo,* 52 AD2d 710, 381 NYS2d 566 (1976). Also, the character and probability of the risk that is

claimed to be foreseeable bears on the steps administrators reasonably should take to avert it. A history of violence among students might call for extensive security measures within a school, while due care upon learning of occasional assaults at dispersed locations might be fully satisfied by precautionary warnings. It would not be wholly unreasonable for a factfinder to conclude that such warnings should have been given on the information available to defendant, or that none were required. The directed verdict prevented the jury from considering that question.[20]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed and the case is remanded to the circuit court for further proceedings.

---

[20] Defendant also contends that the circuit court's decision could be affirmed on grounds of the school district's immunity for a "discretionary function or duty" under ORS 30.265(3), although that issue was not briefed or argued in the Court of Appeals. We think that a school principal's failure to take any precautions whatever, if that was unreasonable, is not an exercise of policy discretion, *see Miller v. Grants Pass Irrigation,* 297 Or 312, 686 P2d 324 (1984), though a school board's choice between expenditures on security personnel or other types of safeguards might be.