Argued and submitted January 27, affirmed April 6, reconsideration denied June 3, petition for review allowed July 6, 1988 (306 Or 155)

**HEFTY,**
*Appellant,*

*v.*

**COMPREHENSIVE CARE CORPORATION,**
*Respondent.*

(16-85-05306; CA A44372 (Control))

**HEFTY et al,**
*Appellants,*

*v.*

**COMPREHENSIVE CARE CORPORATION,**
*Respondent.*

(16-85-07732; CA A44383)
(Cases Consolidated)

752 P2d 1231

Patrick L. Hadlock, Corvallis, argued the cause for appellants. With him on the brief were Robert G. Ringo and Ringo & Stuber, P.C., Corvallis.

Emil Berg, Portland, argued the cause for respondents. With him on the brief was Hallmark, Griffith & Keating, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

In these consolidated tort actions, plaintiffs appeal a summary judgment for defendant. We affirm.

Plaintiffs are Kimberly, a minor at the start of this action, and her parents. The affidavits, depositions and exhibits submitted on summary judgment established these facts. Kimberly was 16 years old when she was admitted with a diagnosis of adolescent alcoholism and hysterical personality to defendant's Adolescent Care Unit on October 13, 1983. Her mother was with her when she entered the facility. They were advised that the treatment was voluntary, that the care unit was not locked and that the patients had the right to discontinue treatment. On October 19, 1983, at 11:00 p.m., Kimberly demanded to leave and was discharged against medical advice. She had been staying with her boyfriend immediately before her admission and phoned him when she decided to leave. She then left the unit with two other residents. Defendant has an internal policy of notifying parents or police when a resident leaves against medical advice or without permission. Kimberly's chart showed that a staff member made a phone call to her parents, but no one answered the phone. Her mother stated that she was at home during the entire evening and that the phone did not ring. The parents did not learn about Kimberly's leaving until the following evening. On October 20, 1983, at about 8:00 p.m., she was injured in a motorcycle-car collision while she was a passenger on her boyfriend's motorcycle. Neither alcohol nor drugs was a factor in the accident or her injury. There is no contention that her boyfriend was in any way at fault. Her parents had never objected to her riding on motorcycles and, in fact, the family had owned and ridden them.

Plaintiffs' complaints had identical allegations that defendant was negligent in that it (1) failed to notify Kimberly's parents when she left, (2) failed to notify the police, (3) failed to document adequately its efforts to contact the parents or the police, (4) failed to provide alternative care for Kimberly after she left the unit and (5) discharged her without medical approval at a time when it knew or should have known that she was incapable of caring for herself.[1]

---

[1] The parties do not suggest that the responsibility of defendant to Kimberly's parents might be different from its responsibility to her.

Plaintiffs' allegations assume that defendant had an obligation to do or avoid doing the things alleged. "Duty" as a concept always used to formulate a legal limit to a defendant's liability was disapproved in *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 734 P2d 1326 (1987). *Fazzolari* did not, however, completely abandon the duty concept, which still defines the limits of a defendant's liability when a plaintiff relies on other than the generalized standard of care that the common law of negligence imposes on persons at large:

> "[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." 303 Or at 17.

Here, plaintiffs did not rely on the common law standard of care but on responsibilities arising from a relationship giving rise to particular duties.[2] Plaintiffs alleged that defendant operated an adolescent care unit and that Kimberly was admitted to that unit. Defendant admitted those facts. Plaintiffs thus invoked the relationship of the treatment center to the patient as the source of defendant's duty of care.

In *Fazzolari,* defendant's duty of care arose from the relationship of a school to its students. The Supreme Court noted that that relationship is founded on a compulsory school law which virtually mandates that children be in a school for most of the day and which leaves little choice to a student as to which school she will attend. Because most high school students are minors, school personnel have a great deal of supervisory authority over them. As a consequence, a school's obligation of care for its students is broader than the obligations which might apply to other persons. *See Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 20.

Unlike *Fazzolari,* where the relationship created a broad duty of care, the relationship of plaintiffs and defendant here created a narrowly defined duty. By statute, Kimberly, a

---

[2] This is not a case to which the common law standard of reasonable care with respect to the safety of children applies. *See Fisher v. Burrell,* 116 Or 317, 241 P 40 (1925).

16-year old, had the right to determine her medical care without her parents' consent. ORS 109.675.[3] Defendant's undertaking to treat Kimberly was subject to the requirement that she remain willing to participate in the program.

Plaintiffs alleged that defendant was negligent in releasing Kimberly and in failing to provide alternative care. However, defendant had no choice whether to do or not to do those things. Plaintiffs knew that defendant's program was voluntary, that the care unit would remain unlocked and that Kimberly could choose to discontinue treatment. Once Kimberly had withdrawn her consent to treatment, defendant had no duty nor, indeed, any authority to hold her until it could notify her parents. Neither could it require her to enter alternative care. Plaintiff was not entitled to proceed on those allegations.

Plaintiffs also alleged that defendant was negligent in failing to notify the parents or police when Kimberly left the unit. Defendant's affirmative duty to do so existed because of its internal policy to notify parents when an "elopement" occurred. Defendant concedes that an issue of fact existed as to whether its failure to do more than try to call the parents once was negligent. It does contend, however, that any negligence in these respects was not the cause of plaintiffs' damage.

Although plaintiffs did not allege facts showing how the failure to notify her parents or the police caused Kimberly to be injured by a third party, they argue that they need not show that the actual sequence of events was predictable so long as defendant's acts exposed plaintiffs to the generalized risks of the type of incidents and injuries which actually occurred. *Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 13. They contend that it was error to grant summary judgment, because it could not be said as a matter of law that

---

[3] ORS 109.675(1) provides:

"A minor 14 years of age or older may obtain, without parental knowledge or consent, outpatient diagnosis or treatment of a mental or emotional disorder or a chemical dependency, excluding methadone maintenance, by a physician licensed by the Board of Medical Examiners for the State of Oregon, a psychologist licensed by the State Board of Psychologist Examiners, a nurse practitioner registered by the Oregon State Board of Nursing or a clinical social worker registered by the State Board of Clinical Social Workers or a community mental health program established and operated pursuant to ORS 430.620 when approved to do so by the Mental Health Division pursuant to rule."

plaintiffs' injuries were not foreseeable and because a jury could determine that defendant's negligence was a "substantial factor in placing an impaired 16-year-old on the back of a motorcycle operated by a 17-year-old boy when this 16-year-old needed to be in a controlled or protected environment."

In the philosophic sense, almost any sequence of events can be seen as "foreseeable," particularly when viewed retrospectively. *See Restatement (Second) Torts,* § 431, *comment a* (1965). In that sense, we agree that it is foreseeable that a patient who leaves a treatment center, and is therefore free to act as she wishes, might ride on a motorcycle. We also agree that it is foreseeable that physical harm could result if a car collides with the motorcycle. In this sense it is foreseeable that any kind of harm that is an ordinary hazard of being at liberty might occur. However, philosophic foreseeability is not the standard by which a defendant's liability is measured. A plaintiff must still show that *defendant's conduct unreasonably created the foreseeable risk* of the injury. *See Kimbler v. Stilwell,* 303 Or 23, 26, 734 P2d 1344 (1987).

In determining whether a defendant is to be held liable for a sequence of events leading to injury, it is tempting to take the easy resolution and say that foreseeability always is a question for the jury. However, the trial judge has a more active role. Relying on *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970), the Supreme Court reiterated in *Fazzolari* that the trial court judge has the obligation to determine whether, as a matter of law, no reasonable factfinder could decide that a plaintiff had offered evidence sufficient to establish each of the elements of her case. *Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 17.[4] We agree with the trial court that no reasonable factfinder could conclude that plaintiffs did so here.

No reasonable jury could find that defendant's failure to notify Kimberly's parents or the police created the risk that

---

[4] The Supreme Court said:

"The role of the court is what it ordinarily is in cases involving the evaluation of particular situations under broad and imprecise standards: to determine whether upon the facts alleged or the evidence presented no reasonable factfinder could decide one or more elements of liability for one or the other party." 303 Or at 17.

We believe that we have accurately captured the Supreme Court's intended meaning.

she would ride on a motorcycle and be injured in a collision with an automobile. She had voluntarily terminated treatment, and defendant had no choice but to release her. It could not hold her, whether or not it contacted her parents, and, although it had a policy to notify her parents when she left, there was no evidence that the failure to follow that policy created the risk of the harm which befell Kimberly. Although the general kind of harm which happened might be foreseeable to motorcycle riders, defendant's special duty to protect Kimberly arose from her addiction. It was not a duty to protect her against all risks of being at liberty. Her addiction was not involved in creating the risk that resulted in the harm. *See Fuhrer v. Gearhart By The Sea, Inc.,* 87 Or App 219, 221, 742 P2d 58, *rev allowed* 304 Or 405 (1987).

Plaintiffs did not allege that they relied on defendant's policy in order to be able to intercept Kimberly should she decide to leave. They presented no evidence that they would have restrained her if they had been notified or that they would have forbidden her to ride on the motorcycle. On the contrary, the evidence showed that Kimberly had been staying with her boyfriend before entering the unit and that when she left, she indicated that that was where she wished to return. In the past she had ridden motorcycles, the family had approved of her doing that and, in fact, she had owned a motorcycle.

Any unreasonable risk which might have been caused by defendant's failure to notify the parents would be that plaintiff would resort to her addictive behavior and become injured as a consequence. No reasonable jury could find that the harm which resulted to Kimberly from her decision to ride on the back of a motorcycle was a risk created by defendant. There was no causation issue to submit to a factfinder.[5] *Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 14.

Affirmed.

---

[5] By the same reasoning, plaintiffs have failed to show that any alleged failure on the part of defendant to document its efforts to contact the parents or police could create the risk of injury to Kimberly.