Argued and submitted September 6, 1988, the decisions of the trial court and Court of Appeals affirmed December 28, 1988

HEFTY,
*Petitioner on Review,*

*v.*

COMPREHENSIVE CARE CORPORATION,
*Respondent on Review.*

(16-85-05306; CA A44372 (Control))

HEFTY et al,
*Petitioners on Review,*

*v.*

COMPREHENSIVE CARE CORPORATION,
*Respondent on Review.*

(16-85-07732; CA A44383)
(SC S35146)
(Cases Consolidated)

766 P2d 1026

Robert G. Ringo, Corvallis, argued the cause for petitioners on review, and filed a memorandum in response to the court's request. On the petition was Patrick L. Hadlock, Corvallis. Also on the petition and memorandum was Ringo & Stuber, P.C., Corvallis.

Emil R. Berg, Portland, argued the cause for respondent on review. With him on the response to the petition for review and memorandum in response to the court's request was Hallmark, Keating & Abbott, P.C., Portland.

Before Peterson, Chief Justice, and Linde, Campbell, Carson, Jones, and Gillette, Justices, and Van Hoomissen, Justice pro tempore.**

CARSON, J.

** Lent, J., retired September 30, 1988.

## CARSON, J.

In this negligence action, we must decide whether plaintiffs may submit their allegations of defendant's negligence to the trier of fact. Because the trial court granted defendant's motions[1] for summary judgment, we review the record in the light most favorable to plaintiffs, mindful that defendant must show that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. ORCP 47C. *Stanfield v. Laccoarce,* 288 Or 659, 665, 607 P2d 177 (1980).

The record discloses the following:

Plaintiffs are Kimberly and her parents. Defendant operates an Adolescent Care Unit (Unit). Kimberly was 16 years old when admitted to the Unit for treatment on October 13, 1983, with a diagnosis of alcoholism. Kimberly's mother accompanied Kimberly during admission, and both were advised that treatment was voluntary and that the Unit was unlocked.

On October 19, 1983, Kimberly decided to leave. She was discharged against medical advice. She telephoned a friend with whom she had been staying before admission and left the Unit.

Although a Unit staff member claimed to have tried immediately to reach Kimberly's parents by telephone without success, Kimberly's mother stated that she was at home at the time and that she did not hear the telephone ring. Kimberly's parents did not learn of Kimberly's discharge until the following evening of October 20, 1983, when they went to the Unit for a meeting.

---

[1] This proceeding concerns companion cases consolidated for trial and appeal. In the first (Lane County Case No. 16-85-05306), plaintiff Kimberly Hefty sued defendant for injuries resulting from a motorcycle collision. In the second (Lane County Case No. 16-85-07732), Kimberly's parents sued defendant for expenses incurred in caring for Kimberly after the collision. None of the parties suggest that defendant's responsibility to Kimberly's parents differs from its responsibility to Kimberly, and we, accordingly, do not reach the issue. *See* ORAP 10.15(2). *Compare Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 652 P2d 318 (1982) (child did not have separate claim for loss of negligently disabled mother's society and companionship) *with Hale v. Groce,* 304 Or 281, 744 P2d 1289 (1987) (omitted beneficiary had claim for professional negligence where lawyer omitted testamentary bequest intended by client).

On that evening, Kimberly rode as a passenger on her friend's motorcycle. Kimberly previously had owned a motorcycle and had ridden motorcycles with her parents' approval. The motorcycle upon which she was riding collided with an automobile. Kimberly's helmet apparently was not securely fastened, and she sustained, *inter alia,* severe head injuries. Neither drugs nor alcohol was a factor in the collision.

Plaintiffs subsequently sued defendant in negligence. The trial court granted defendant's motions for summary judgment and entered judgments for defendant. The Court of Appeals affirmed. *Hefty v. Comprehensive Care Corporation,* 90 Or App 310, 752 P2d 1231 (1988). We affirm the decisions of the trial court and Court of Appeals for the reasons set forth below.

Plaintiffs alleged that defendant was negligent because it: (1) Discharged Kimberly when it knew, or should have known, that Kimberly was incapable of caring for herself or controlling her actions; (2) failed to notify Kimberly's parents of her discharge; (3) failed to notify police upon failure to notify parents; (4) failed to document adequately the efforts taken to notify the parents or police so as to coordinate efforts to notify those parties; (5) failed to provide supervision or substitute care for Kimberly upon discharge; and (6) failed to seek her doctor's permission for her discharge.

■ Defendant argues that plaintiffs failed to show that its conduct "caused" their injuries. Causation would be an issue were it necessary to decide whether defendant's conduct "in fact" contributed to the events that harmed plaintiffs. *See Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 14, 734 P2d 1326 (1987). But resolution of this case does not depend upon causation. Instead, resolution of this case hinges upon the following question, which defendant also raises: Whether plaintiffs' injuries fell within the scope of the "generalized risk of the types of incidents and injuries" created when defendant discharged Kimberly. *See Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 13; *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970) (defendant potentially liable for generalized types of injuries and incidents that occurred).

Kimberly admitted herself to defendant's unit for treatment of alcoholism. In a broad sense, however, she also admitted herself for treatment of her impaired judgment and

inability to control her behavior. There was a dual aspect to the scope of the foreseeable risk created when defendant discharged Kimberly: First, that she would resume abusing alcohol and drugs; and second, that she would engage in activities consistent with her impaired judgment and inability to control her behavior.

In part, the Court of Appeals based its decision upon the conclusion that "[n]o reasonable jury could find that defendant's failure to notify Kimberly's parents or the police created the risk that she would ride on a motorcycle and be injured in a collision with an automobile."[2] *Hefty v. Comprehensive Care Corporation, supra,* 90 Or App at 315-16. But that conclusion proves too little. The risk to be foreseen was not that Kimberly would ride on the back of a motorcycle and be injured in a collision with an automobile. "[F]oresight does not demand the precise mechanical imagination of a Rube Goldberg nor a paranoid view of the universe." *Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 21. The risk to be foreseen was more general — it encompassed those generalized incidents and injuries created by discharging Kimberly, an impaired minor addicted to alcohol, without notice to parents or police, without the permission of her doctor, without providing alternative care, and with the knowledge that Kimberly could not care for herself. *See Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 13; *Stewart v. Jefferson Plywood Co., supra,* 255 Or at 609-11 (jury question whether fire posed foreseeable risk of harm of falling through covered skylight).

■ As regards the scope of the risk associated with Kimberly's alcoholism, Kimberly did not resume abusing alcohol or drugs after being discharged from the Unit. Neither the friend nor Kimberly took alcohol or drugs before the collision. Neither alcohol nor drugs factored into the events leading to the collision. On this record, no reasonable trier of fact could conclude that Kimberly's injuries fell within the scope of the foreseeable risk posed by Kimberly's discharge from the Unit.

---

[2] The Court of Appeals also based its decision upon ORS 109.675(1). *Hefty v. Comprehensive Care Corporation,* 90 Or App 310, 313-14, 752 P2d 1231 (1988). We do not reach the statutory issue.

As regards the scope of the risk associated with Kimberly's impaired judgment and inability to control her behavior, here, too, the injuries fell outside the scope of the risk. Motorcycle riding is a common, everyday activity. Kimberly herself owned and rode motorcycles with her parents' permission. Engaging in an everyday mode of transportation would not appear to be an activity associated with the exercise of poor judgment or the inability to control one's behavior. Moreover, there is nothing in the record to suggest that Kimberly's behavior contributed to the collision in which she was involved or to her alleged failure to fasten securely her safety helmet.

"[I]n an extreme case a court can decide that no reasonable factfinder could find the risk foreseeable." *Donaca v. Curry Co.,* 303 Or 30, 38, 734 P2d 1339 (1987). This is an "extreme case." The trial court properly granted defendant's motions for summary judgment.

The decisions of the trial court and the Court of Appeals are affirmed.